IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES C. BARBER,                )
                                  )
            Plaintiff,            )
                                  )
     v.                           )    1:04CV118
                                  )
TODD PINION, TERRY PEACOCK,       )
AND ROBERT NICHOLS,               )
                                  )
            Defendants.           )

**RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

This matter is back before the Court once more on Defendants' motion for summary judgment. Previously, a like motion was denied without prejudice in order to allow the parties discovery. (Docket No. 30.) At that time, the Court felt that the case needed some factual development in addition to the facts set out in Plaintiff's unverified complaint and an affidavit from Officer Nichols. Plaintiff's complaint essentially stated that Nichols sprayed him with mace without any reason or justification, whereas Nichols indicated that Plaintiff threatened him. Such a polarized view of the facts likely could not be resolved on summary judgment. Even though Plaintiff had not presented any sworn evidence, the Court had a concern because the complaint had stated that an Officer Green indicated that Defendant needed professional help, thereby suggesting that Plaintiff's view of the situation had corroboration. As a result, the Court determined that the factual record needed to be further developed. This has occurred.

Defendants argue that the use of the pepper spray in this case did not amount to constitutionally excessive force because Plaintiff suffered no more than minimal injury, with the temporary irritation of his eyes. In fact, the undisputed evidence shows that soon after Plaintiff was sprayed, he was allowed to shower and was given clean clothes. He was examined by the nurse, who noted redness around the eyes, with some watering, but no skin irritation. Plaintiff stated he felt like he was on fire, but that he would be all right. A visit to the optometrist a month and one-half later resulted in a finding of no problems with the eyes as a result of the pepper spray. (See Lott Affidavit, Docket No. 18.)

Defendants rely on Norman v. Taylor, 25 F.3d 1259, 1263-1264 (4th Cir. 1994), for their claim that the slight temporary irritation suffered by Plaintiff cannot support a claim of excessive force pursuant to 42 U.S.C. § 1983. In that case, the Court found that where the inmate, at most, received a sore thumb as a result of a confrontation with the guard, the injury was de minimis and not sufficient to support an Eighth Amendment excessive force claim. Id. Plaintiff, on the other hand, also relies on Norman. Plaintiff's contention is that even though a prisoner did not suffer lasting injury, this does not rule out a claim of excessive force when, as Plaintiff contends here, there was absolutely no need to use the force at all. The Court will return to this assertion in a moment, but first it will set out the standards whereby Eighth Amendment excessive force claims are to be judged.

A good, succinct discussion of these standards is set out in Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998), wherein it is stated,

> To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, he must satisfy a subjective requirement that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1993). In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085). When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, "will support a reliable inference of wantonness in the infliction of pain." Id. at 322, 106 S.Ct. at 1085.
>
> In addition to satisfying the subjective requirement, the inmate must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were "objectively harmful enough" to offend "contemporary standards of decency." Hudson, 503 U.S. at 8, 112 S.Ct. at 1000 (internal quotation marks omitted). In determining whether the objective component is satisfied, the factfinder must evaluate the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose. Thus, in Whitley, the Court found that in the context of quelling a major prison disturbance, a correctional officer's use of force in shooting an inmate in the leg was "part and parcel of a good-faith effort to restore prison security" and did not violate the inmate's Eighth Amendment rights. 475 U.S. at 326, 106 S.Ct. at 1087. On the other hand in Hudson, in the context of a verbal argument, the Court found that blows deliberately directed to the inmate to punish him, causing bruises, swelling, loosened teeth, and a cracked dental plate, were sufficient to support an excessive force claim in violation of the Eighth Amendment. See 503 U.S. at 10, 112 S.Ct. at 1000.
>
> . . . .

> In short, for an inmate to prove an excessive force claim, he must satisfy not only the subjective component that the correctional officers acted with a sufficiently culpable state of mind, but also the objective component that his alleged injury was sufficiently serious in relation to the need for force to establish constitutionally excessive force. See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996).

In the instant case, with respect to the objective component of the standard, Plaintiff contends that the seriousness of the injury must be judged in relationship to the need for force, so that if there was no need for the use of force at all, then even a minor injury would be sufficient to prove an excessive force claim. To establish this contention, Plaintiff cites the footnote in Norman, which states as follows:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. Cf. Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,' " and thus expressly outside the de minimis force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Norman, 125 F.3d at 1264 n.4. Clearly, Norman holds that pain itself could be of such a degree so as to constitute more than de minimis injury when the need for force was non-existent or minimal. For example, in Lawrence v. Bowersox, 297 F.3d 727 (8th Cir. 2002), the court found an Eighth Amendment violation when the prisoners were confined in their cells and were not disobeying orders, but nevertheless were not just sprayed, but doused with pepper spray

-4-

from large canisters.  Thus, the amount of pain inflicted was not small.  While the evidence of lasting damage was minimal, the court upheld a nominal damage award in favor of the plaintiffs for what it described as a vicious attack for no legitimate reason.  In addition, it is possible that the gratuitous use of pepper spray could be seen as repugnant to the conscience of mankind for even small amounts of temporary pain.  In <u>Treats v. Morgan</u>, 308 F.3d 868 (8th Cir. 2002), an inmate was pepper sprayed and thrown to the floor.  The Eighth Circuit commented that lasting injury is not necessary to satisfy an excessive force violation should the jury conclude the guards acted maliciously with the specific intent to cause injury.  At the summary judgment stage, it was assumed that the prisoner was sprayed without warning when he refused to take a copy of a paper offered to him and turned to talk to another guard about the issue.  However, it must also be noted that in that case, unlike the instant situation, the prisoner was thrown to the floor, in addition to being sprayed.

In summary, it appears that the <u>de</u> <u>minimis</u> force threshold for establishing an excessive force violation may not be invoked by a defendant if the use of force was both gratuitous and done for the purpose of sadistically imposing pain.  In that situation, even if there were no lasting injuries, the mere infliction of temporary pain could be sufficient to support an Eighth Amendment excessive force claim.  With these principles in mind, the Court will now examine the facts in a light most favorable to Plaintiff so see whether the undisputed material facts are such that summary

-5-

judgment could be granted to Defendants. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986).

Plaintiff relies on the facts set out in the complaint, which Plaintiff's counsel states was verified, to which Defendants have not objected nor have they contested the matter. The complaint states that on October 5, 2003, Officer Nichols told Plaintiff to tuck in his shirt, which he did, but Officer Nichols was not aware that the order had been obeyed. Consequently, Nichols ordered Plaintiff out of a crowded elevator, but was not able to see Plaintiff's waist and that the shirt had been tucked in. Plaintiff immediately exited the elevator and stood face-to-face and within three feet of Nichols. The complaint relates that Officer Nichols ordered Plaintiff to back up, but before he could, Nichols pepper sprayed him. Plaintiff contends he did not touch or threaten Nichols. As Nichols was spraying him, Plaintiff asserts he yelled for Nichols not to spray him because he was diabetic. As he was backing up, Nichols was approaching him, spraying. Plaintiff asserts that the spraying started while he was at a distance of eight to ten feet away, that Officer Green observed the entire confrontation, and that in her disciplinary hearing statement she states that Plaintiff was sent to the water fountain to wash himself and Nichols charged him with disobeying an order.

In Officer Nichols' prior affidavit, he characterized the incident as Plaintiff having disobeyed an order to properly dress while coming out of his cellblock. He states that after getting off the elevator, Plaintiff argued, jumped at, and walked toward

-6-

him with his fists balled up. According to Nichols, he requested help from a nearby officer, pulled out his pepper spray and directed it at Plaintiff, who kept moving toward him, as Nichols backed up. Nichols states he felt physically threatened and began to spray Plaintiff.

This record has now been supplemented with the affidavits from the disciplinary hearing. Inmate Jefferies stated that Officer Nichols and Plaintiff were engaged in a regular conversation when Nichols pulled out the pepper spray as the inmate only stood there. This statement is not corroborated by any other statement and is contrary to Plaintiff's complaint.

Inmate Billy McKenny stated that he heard a "fussing" and as Plaintiff started to walk away, Defendant sprayed him in the front and the back. This affidavit is not inconsistent with either Plaintiff's or Nichols' version.

Inmate Bobby Henry stated that he saw the Officer pull out his stick and then his pepper spray and start to spray Plaintiff and then Plaintiff walked away. This is consistent with Plaintiff's and Defendants' version.

Walter Harris stated that he heard Plaintiff say, "yeah, Nichols spray me, spray me. Why are you always f---ing with someone unnecessary." Defendant then pulled the baton and advanced toward Plaintiff and started to spray. This statement is also majorly consistent with both Plaintiff's and Defendants' version.

In Plaintiff's statement, he claims that as he was going to lunch, he was putting his shirt on when he reached the elevator.

-7-

At that point, Officer Nichols told him to step off. Plaintiff states that he stepped off of the elevator and that Nichols then called the sergeant and told him to step away. Plaintiff claims he did this, but nevertheless was sprayed with mace, first in the face and then on the back of his head as he walked away.

Tara Green, the individual who Plaintiff states saw the entire proceeding and on whom Plaintiff relies, relates that she heard Nichols having words with Plaintiff, but could not hear what was said, although she thought it had something to do with his shirt. The inmate appeared, she says, to be tucking in his shirt when he walked onto the elevator and that he was saying something to Nichols as he was doing so. Nichols then asked Plaintiff to step off the elevator and stand against the wall. Plaintiff, at first, complied, but then turned and then she saw Plaintiff and Officer Nichols "bowed up against each other."[1] At this point, Nichols asked her to call for help, which she did. She saw Nichols pull out his spray can and begin to spray. Plaintiff turned and walked away to the water fountain to wash his face. She stated that both Plaintiff and Officer Nichols were yelling while this entire confrontation took place.

Todd Pinion, the Superintendent of the Piedmont Correctional Institution who, for some reason has been listed as a defendant although he had no personal involvement in the situation, submitted

---

[1] It is not clear that Officer Green means that Plaintiff and Defendant were touching, as opposed to being near one another. Her use of the term "against" is ambiguous. Given that no other witness, including the parties, has indicated there was touching, the Court assumes they were only in close proximity.

an affidavit.  He states that Officer Nichols expects inmates to obey rules and show respect to officers, but may put too much focus on minor infractions.  Based on the reports that inmate Barber was being disrespectful to the officer, shouting at close range, that they were bowed up against each other, and that it was not clear that Plaintiff was backing away when the spraying began, he could not find that Officer Nichols actions violated prison policy.

Superintendent Pinion's assessment of the situation appears to be a rather accurate one with respect to Plaintiff's excessive force claim as well.  This is not an instance where the officer began spraying sadistically for no reason at all in order to inflict pain.  Rather, this was a situation where a minor event spiraled out of control.  To begin with, even Plaintiff admits that Officer Nichols was not aware that Plaintiff had obeyed his order.  As Plaintiff was standing on the elevator, Nichols could not see that the order had been obeyed.  As a result, Plaintiff was ordered out of the elevator.  At this time, both individuals shouted loud, angry words.  Plaintiff taunted the officer, encouraging him to spray him, and used disrespectful language to complain about the officer being overly concerned with minor rules.  Officer Green heard the loud, angry exchange of words and also saw that the two men were bowed up against each other.  Therefore, while Plaintiff states that he did not touch or threaten Officer Nichols, he has not denied that he used loud, angry words, and perhaps cursed the officer, and was bowed up against him in a position which Officer Nichols could have interpreted as a threatening position even if

-9-

Plaintiff did not intend it to be.  Plaintiff admits that Officer Green had a clear view of the situation.

These facts do not support a reliable inference that Nichols acted with wantonness while inflicting the pain as the court in Stanley v. Hejirika, 134 F.3d at 634, found to be a prerequisite for an excessive force claim.  Even Plaintiff recognizes this to be a necessary element of such a claim.  (Pl.'s Br. at 4.)  In the present case, Plaintiff's actions do not constitute a situation similar to where "a prisoner is held and calmly beaten by two guards in response to a verbal argument . . . ." Stanley, 134 F.3d at 634.  Instead, even according to Plaintiff, Officer Nichols mistakenly thought that Plaintiff had deliberately disobeyed an order with respect to tucking in his shirt.  Soon thereafter, the two men were face-to-face where loud, angry words were exchanged and plaintiff was bowed up against Officer Nichols.  While Plaintiff may have thought that Officer Nichols should not feel threatened, that is not the criteria for proving an excessive force claim.  Rather, the issue is whether the situation was such that a reasonable officer would or could have felt threatened, and the answer to that question, on these facts, is in the affirmative.

To the extent that the evidence shows that Officer Nichols continued spraying as Plaintiff was walking away, it appears the spray would have only hit Plaintiff in the back of the head, if at all, and can be understood as continued reaction in the heat of excitement and the moment.  What is missing is any indication that Nichols sprayed in order to deliberately cause pain without any

-10-

legitimate purpose. Instead, it appears that Officer Nichols was responding to what he considered to be a prison disturbance. In light of the loud, angry exchange of words and the parties being bowed up against each other, this could be perceived both as a personal threat and/or as part of a process whereby Plaintiff intended to deliberately disobey an order with respect to the shirt or, in any event, turn it into an unsettling officer-inmate confrontation in a prison atmosphere where such disturbances can be extremely dangerous. Thus, Plaintiff has not produced evidence to support the subjective prong for an excessive force claim.

Next, Plaintiff has not satisfied the objective element for an excessive force claim because he has not shown a sufficiently serious injury in light of the need for use of force. In this case, Plaintiff suffered some pain, but the effect of it was temporary and of a low enough level in light of the fact that it would not be unreasonable for Officer Nichols to think that some immediate reaction needed to be taken against the loud, angry words and the bowing. The <u>de minimis</u> nature of the minor, temporary pain is not sufficient to satisfy the objective portion of the test under the facts of this case. The minor, temporary pain, coupled with the fact that it cannot be said that the use of some force was not necessary, leads to the conclusion that Plaintiff has not satisfied the objective prong for establishing an excessive force violation.

In addition to finding that Defendants are entitled to summary judgment on Plaintiff's excessive force claim, which constitutes

-11-

the first and second causes of action, the Court finds that Plaintiff's third cause of action should be dismissed as well. Here, Plaintiff states that Defendant Nichols violated the State's felony assault statute and regulations of the North Carolina Department of Correction concerning use of force. However, Plaintiff fails to show that an inmate has a private cause of action for violation of Department of Correction regulations or for violation of the State's criminal laws. Also, he fails to show that Defendant violated the State's criminal laws or the Departmental regulations.

Finally, Plaintiff fails to show that Superintendent Pinion or Officer Terry Peacock were involved in the pepper spray incident, except in some way after the fact. However, Plaintiff fails to present any evidence that any of these later actions violated Plaintiff's right to be safe from use of excessive force. Plaintiff fails to make any showing that Superintendent Pinion should be liable for the actions of Officer Nichols. See Randall v. Prince George's County, Md., 302 F.3d 188 (4th Cir. 2002)(must show past misconduct or widespread misconduct). The doctrine of respondeat superior does not apply to § 1983 actions. Rizzo v. Goode, 423 U.S. 362 (1976). With respect to both Superintendent Pinion and Officer Peacock, Plaintiff must show some personal involvement in the deprivation. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). Here, Plaintiff's own complaint shows that only Officer Nichols was involved in the spraying of the pepper spray.

Therefore, these two Defendants should be dismissed from this action for this reason as well.

**IT IS THEREFORE RECOMMENDED** that Defendants' second motion for summary judgment (docket no. 47) be granted, and that this action be dismissed.

_____
**United States Magistrate Judge**

February 13, 2007